*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TEAM REHABILITATION W2,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
April 25, 2019

No. 343005
Oakland Circuit Court
LC No. 17-160947-NF

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Plaintiff, Team Rehabilitation W2, appeals by right the trial court's order granting summary disposition in favor of defendant, State Farm Mutual Automobile Insurance Company. Non-party Timothy Haerens, who was insured by State Farm under a no-fault insurance policy, was injured in a motor vehicle accident and received rehabilitation and therapy services from plaintiff. Haerens executed an assignment of limited rights in favor of plaintiff. Plaintiff then commenced this action against State Farm under the assignment in an effort to obtain no-fault benefits to cover the cost of the services it provided Haerens. The trial court concluded that language in the assignment no longer obligated Haerens to pay plaintiff for the services he received; therefore, there were no longer any "incurred" charges or "allowable expenses" for State Farm to pay under MCL 500.3107(1)(a). We reverse and remand for further proceedings.

In a first amended complaint, plaintiff alleged that Haerens was involved in a car accident on January 3, 2016, sustaining injuries that necessitated medical care and treatment. As part of his care, plaintiff provided recovery, rehabilitation, and therapy services to Haerens, incurring costs and expenses in doing so. Plaintiff further alleged that Haerens was covered by a no-fault insurance policy issued by State Farm, that State Farm was first in priority to pay benefits relative to Haerens's therapy, and that plaintiff had provided reasonable proof in support of payment of benefits to State Farm. Plaintiff contended that State Farm was in breach of contract, i.e., the insurance policy, and that plaintiff had the authority to bring a cause of action against State Farm based on an assignment of limited rights executed by Haerens on December 1, 2016. Along with the breach of contract count, plaintiff set forth a claim of promissory estoppel. In

-1-

support, plaintiff maintained that State Farm had told plaintiff twice that Haerens's insurance policy was "open and billable," that plaintiff, justifiably relying on those statements, provided services to Haerens in expectation of being compensated, and that State Farm did not pay plaintiff, nor did it ever have any intention of paying plaintiff. Finally, plaintiff sought declaratory relief with respect to the applicability of the no-fault act, MCL 500.3101 *et seq.*

The assignment of limited rights executed by Haerens stated that Haerens assigned to plaintiff "the right to payment for therapy services provided to [Haerens] by [plaintiff] to which [he] may be entitled under the No Fault Act, MCL 500.3101 et seq." The agreement only assigned "the right to payment of . . . charges for therapy services" and not any other benefits that Haerens might be entitled to under the no-fault act. The assignment was not revocable. The assignment further provided:

> This assignment is for all services provided to Me by Team Rehab on or before the date of execution of this agreement. This assignment does not include an assignment of any future No Fault benefits.

> I certify that I have received therapy services from Team Rehab and incurred charges for those services. This agreement assigns the rights, privileges and remedies for those charges to Team Rehab.

> I certify that I understand that team Rehab will pursue payment from persons or companies other than Me. If Team Rehab determines, as a result of its own investigation or judicial or quasi-judicial proceedings, that I do not have a right to No Fault Benefits under MCL 500.3101 et seq, Team Rehab will pursue payment under My other insurance policies, or other health benefits such as Medicare.

> *Team Rehab certifies that it will not pursue payment of its charges from Me, but will accept payment from the persons or companies it pursues as payment of its total charges.* If I receive a payment from one of the parties pursued by Team Rehab that includes payment for therapy provided by Team Rehab, and that party denies payment to Team Rehab, Team Rehab may demand payment from Me.

> Team Rehab undertakes to pay all the costs of pursuing payment from persons or companies other than Me under the No Fault Act . . . . This includes . . . . claims for No-fault interest and attorney fees. I undertake to cooperate with Team Rehab by providing information to Team Rehab's attorneys, answering their questions, attending depositions and appearing at a trial.

> If this agreement is nullified by judicial or quasi-judicial proceedings, I automatically grant Team Rehab a lien on any benefits to which I may be entitled under the No Fault Act.

> I understand that if I retain counsel to seek My No Fault Benefits, that counsel shall have no right to pursue payment for Team Rehab's charges for

therapy services provided to Me by Team Rehab, nor shall that counsel have any right [to] payment of an Attorney fee from services provided by Team Rehab.

Patient and Team Rehab agree that if any terms or provisions of this agreement are declared unenforceable by any Court or Federal or State Agency having jurisdiction over the subject matter of this agreement, the terms that are not affected shall remain in full force and effect. [Emphasis added.]

In lieu of filing an answer to plaintiff's complaint, State Farm filed a motion for summary disposition under MCR 2.116(C)(8). State Farm asserted that the insurance policy contained a clause which provided that "[n]o assignment of benefits or other transfer of rights is binding upon us unless approved by us." Thus, according to State Farm, the purported assignment was invalid. In support, State Farm attached 38 pages of an insurance policy without identifying where exactly the cited language could be found. Additionally, the attached pages made no reference to the name of a particular policyholder, but it did contain a form number. State Farm noted that plaintiff did not have an independent cause of action against State Farm under the no-fault act in light of our Supreme Court's decision in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). Next, State Farm contended that the assignment itself waived plaintiff's right to pursue Haerens for services rendered; therefore, under MCL 500.3107(1)(a), "incurred" charges no longer existed, and "allowable expenses" recoverable under the no-fault act must actually be incurred. Finally, State Farm argued that partial assignments are unenforceable as a matter of law.

In response, plaintiff maintained that it had a viable cause of action against State Farm on the basis of the assignment Haerens executed. Plaintiff noted that *Covenant Med Ctr* recognized and approved of such assignments. Plaintiff also argued that "the subject assignment is not in fact partial, but a complete assignment of a debt distinguishable from other debts perhaps owed by" State Farm. Plaintiff further responded that State Farm's "anti-assignment" clause in its policy did not defeat plaintiff's action. Plaintiff asserted that "an anti-assignment clause will not be enforced where a loss occurs before the assignment, because in that situation, the assignment of the claim under the policy is viewed no differently than any other assignment of an accrued cause of action." Plaintiff additionally contended that the assignment did not waive plaintiff's right to pursue State Farm for the payments, arguing that "the assignment in no way attempted to relieve State Farm of any obligations to pay th[e] bill." Plaintiff also indicated that the insurance policy attached to State Farm's summary disposition brief was not the correct policy.

In a reply brief, State Farm submitted a heavily redacted document regarding policy details for Haerens's specific insurance policy, and the document referred to the same form number identified in the policy previously submitted by State Farm.

On January 10, 2018, the trial court heard State Farm's motion for summary disposition and took the matter under advisement. On March 9, 2018, the trial court issued a written opinion and order granting summary disposition in favor of State Farm. The court first ruled that State Farm had not shown that the insurance policy barred the enforceability of the assignment or that the assignment was only a partial assignment. The trial court next quoted MCL 500.3107(1)(a), which provides that personal protection insurance (PIP) benefits are payable for "[a]llowable expenses consisting of all reasonable charges *incurred* for reasonably necessary

products, services and accommodations for an injured person's care, recovery, or rehabilitation." (Emphasis added.) After citing and examining case law construing MCL 500.3107(1)(a), the trial court concluded:

> The Plaintiff's assignment clearly states that it will only demand payment from Haerens if [State Farm] pays Haerens No-Fault benefits . . . . If [State Farm] never makes a payment to Haerens, Haerens never has to pay the Plaintiff. Likewise, if [State Farm] never makes a payment to Haerens, the Plaintiff cannot file a lien against Haerens. Therefore, Haerens has no legal obligation to pay the Plaintiff if [State Farm] never pays any benefits. The court concludes that because of the assignment, Haerens has not incurred the charges from the Plaintiff and therefore he is not entitled to benefits from [State Farm] on those charges. Therefore, no factual development could possibly justify recovery on any of Plaintiff's claims. The Amended Complaint is dismissed.

Plaintiff now appeals as of right.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). Additionally, this Court reviews de novo issues concerning the proper interpretation of a contract and the legal effect or application of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). And finally, we likewise review de novo issues of statutory construction. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

MCR 2.116(C)(8), which provides for summary disposition when a "party has failed to state a claim on which relief can be granted," tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision under MCR 2.116(C)(8). *Id.* All factual allegations in the complaint are accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381; 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130. Although the trial court granted State Farm's motion for summary disposition under MCR 2.116(C)(8), the court's reasoning was ultimately based on construction and application of the language in the assignment. According to the court, the assignment no longer obligated Haerens to pay plaintiff for the therapy and rehabilitation services he had received, except if State Farm paid Haerens for such services, thereby defeating any recovery by plaintiff from State Farm under MCL 500.3107(1)(a). When a court takes into consideration documentary evidence or information outside of the pleadings in granting a motion for summary disposition, we must treat the court's decision as having granted summary disposition under MCR 2.116(C)(10). *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016).

In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the framework regarding analysis of a motion for summary disposition brought under MCR 2.116(C)(10). It explained:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is

entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

When a judgment is sought under MCR 2.116(C)(10), the moving party is required to submit "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion." MCR 2.116(G)(3). When the moving party satisfies this requirement for purposes of MCR 2.116(C)(10), the "adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). And "[i]f the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." *Id.*

The contractual assignment between Haerens and plaintiff, in conjunction with MCL 500.3107(1)(a), formed the basis for the trial court's ruling. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999).

"When interpreting a statute, the primary rule of construction is to discern and give effect to the Legislature's intent, the most reliable indicator of which is the clear and unambiguous language of the statute." *Perkovic v Zurich American Ins Co*, 500 Mich 44, 49; 893 NW2d 322 (2017). The language of a statute must be enforced as written, "giving effect to every word, phrase, and clause." *Id.* Additional judicial construction is only permitted when statutory language is ambiguous. *York Charter Twp v Miller*, 322 Mich App 648, 659; 915 NW2d 373 (2018). When determining the Legislature's intent, statutory provisions are not to be read in isolation; rather, they must be read in context and as a whole. *In re Erwin Estate*, 503 Mich 1, 6; 921 NW2d 308 (2018).

We begin by examining the language of the relevant statute, MCL 500.3107, which, again, provides in pertinent part that PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." To establish entitlement to PIP benefits under MCL 500.3107(1)(a), the claimant must show that (1) an

expense was incurred; (2) the expense was for a service, product, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the charge or expense was reasonable. *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 541; 637 NW2d 251 (2001). With respect to the term "incurred," as used in MCL 500.3107(1)(a), the *Bombalski* panel ruled:

> We . . . conclude that in light of the ordinary meaning of incurred and the public policy behind the no-fault act, incurred charges within MCL 500.3107(1)(a) do not encompass any amounts (1) exceeding those that plaintiff's health insurer actually paid in satisfaction of plaintiff's medical bills and (2) for which plaintiff no longer bears legal responsibility. [*Id.* at 546.]

The Court explained that to "incur" means suffering or bringing upon oneself a liability or expense and that a person becomes liable for medical expenses when he or she accepts medical treatment. *Id.* at 542. The Court held that a healthcare provider's full charges are not incurred by the insured to the extent that the charges exceeded amounts paid by a medical insurer as full compensation. *Id.* at 543. In *Williams v AAA Mich*, 250 Mich App 249, 269; 646 NW2d 476 (2002), this Court similarly held:

> In this case, plaintiff seems to acknowledge that he owes no outstanding amounts to [the hospital] for the services it provided and that, pursuant to its contractual agreement with [the medical insurer], [the hospital] accepted the reimbursement amounts that [the medical insurer] offered as payment in full for the services that [the hospital] provided. Consequently, plaintiff did not incur the full amounts billed by [the hospital] and is not entitled to a further recovery from defendant of the difference between the full amounts that [the hospital] billed for its services and the lesser amounts that [the hospital] accepted from [the medical insurer] as payment in full.

Here, the trial court ruled, and State Farm argues, that the assignment effectively extinguished any liability or debt Haerens incurred in relation to the services plaintiff provided. This position is based on the language in the assignment which states that plaintiff "certifies that it will not pursue payment of its charges from [Haerens], but will accept payment from the persons or companies it pursues as payment of its total charges." Plaintiff contends that the language of the assignment constituted a covenant not to sue, as opposed to a release of liability, and that the covenant not to sue did not absolve Haerens of liability for the services he received from plaintiff. Plaintiff further maintains that Haerens incurred charges for its services at the time the services were provided, and nothing in the assignment caused Haerens to "un-incur" the charges. Finally, plaintiff argues that State Farm had no standing to challenge the assignment for purposes of MCR 2.116(C)(8) because State Farm was not a party to the contract. And, in fact, State Farm tortiously interfered with the assignment.

There can be no reasonable dispute that Haerens incurred charges when he accepted and received services from plaintiff. The question is whether those charges lost their "incurred" status following the execution of the assignment between plaintiff and Haerens. *Bombalski* and *Williams* did not involve an assignment, and those cases entailed circumstances in which healthcare providers actually received payment for their services and accepted the payments in

full satisfaction of the incurred debts even though more was originally owed to the healthcare providers. We conclude that the assignment did not discharge the liability or responsibility concerning payment for the services plaintiff rendered. Nor did the charges lose their "incurred" character upon execution of the assignment. The trial court's ruling failed to appreciate the nature of an assignment.

It is well accepted in our jurisprudence that an assignee stands in the shoes of the assignor, acquiring the same rights as the assignor. *Nichols v Lee*, 10 Mich 526, 528-529 (1862); *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 107; 896 NW2d 821 (2016); *Burkhardt v Bailey*, 260 Mich App 636, 652-653; 680 NW2d 453 (2004); *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998); *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). Haerens, as the assignor, held contractual rights to no-fault benefits under the insurance policy which covered amounts owed to plaintiff for rehabilitation and therapy services.[1] On consummation of the assignment, plaintiff stood in Haerens's shoes, and the shoes in which Haerens had been standing were those of a party that had an existing incurred debt that was covered, or potentially covered, by the State Farm no-fault policy. The assignment did not extinguish the obligation or liability; rather, the right to recover the debt simply shifted to the assignee—plaintiff. There remained an incurred charge for services, and to construe the assignment to the contrary would render it entirely illusory. Haerens would enjoy the benefit of not being pursued for payment in return for plaintiff's having no ability to recover from State Farm.

Moreover, there is language in the assignment that does not lend itself to a determination that Haerens's liability for the obligation to plaintiff ceased upon execution of the assignment. In *J & J Farmer Leasing, Inc v Citizens Ins Co of America*, 472 Mich 353, 357-358; 696 NW2d 681 (2005), the Michigan Supreme Court explained the difference between a covenant not to sue and a release of liability:

> There is a material difference between a covenant not to sue and a release. A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim. It does not extinguish a claim or cause of action. The difference primarily affects third parties, rather than the parties to the agreement.

Here, the assignment provided, "If I [Haerens] receive a payment from one of the parties pursued by Team Rehab that includes payment for therapy provided by Team Rehab, and that party denies payment to Team Rehab, Team Rehab may demand payment from Me." If the charge were truly no longer "incurred" or Haerens's liability ended with the assignment, Haerens

---

[1] To be clear, we are proceeding on the assumption that Haerens is entitled to PIP benefits from State Farm in relation to plaintiff's services and that Haerens could make a successful direct claim to State Farm for those benefits. Our ruling is not intended to preclude any defenses that State Farm may have against Haerens under the policy of insurance. The assignment also rendered plaintiff subject to those defenses. See *Wells Fargo Bank*, 318 Mich App at 107 (an assignee is subject to the same defenses as the assignor).

could not be made to pay plaintiff for the rehabilitation and therapy services upon his receipt of benefits covering those services. Additionally, plaintiff simply promised "not [to] pursue payment" from Haerens, which is more in the nature of, or akin to, a covenant not to sue. There is no language in the assignment indicating that plaintiff was releasing Haerens from all liability. In sum, the trial court erred in granting summary disposition in favor of State Farm.

Apparently sensing the potential flaw in the trial court's ruling, State Farm devotes a large portion of its appellate brief to the argument that the trial court should have granted it summary disposition on the basis of the anti-assignment clause in the underlying insurance policy. But, as State Farm recognizes, this precise argument was rejected by this Court in *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 200; 920 NW2d 148 (2018), wherein the panel held:

> [W]e conclude that the anti-assignment clause in the instant case is unenforceable to prohibit the assignment that occurred here—an assignment after the loss occurred of an accrued claim to payment—because such a prohibition of assignment violates Michigan public policy that is part of our common law as set forth by our Supreme Court.

We decline State Farm's invitation to ask for the convening of a special panel for the purpose of creating a conflict with *Shah* under MCR 7.215(J)(2) and (3) considering that our Supreme Court has ordered oral argument on the application for leave to appeal filed in *Shah* and has directed the parties to brief the issue concerning the enforceability of State Farm's anti-assignment clause. 503 Mich 882 (2018).[2] Should our Supreme Court in *Shah* rule in favor of State Farm, there would be potential avenues for State Farm in this case to obtain relief from our ruling.

Finally, in light of our holding, we find it unnecessary to address plaintiff's tortious interference argument and its contention that State Farm lacked standing to challenge the assignment for purposes of a motion brought pursuant to MCR 2.116(C)(8), where State Farm was not a party to the assignment.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, we award taxable costs to plaintiff under MCR 7.219.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

---

[2] We also note that another panel of this Court, absent disagreement, applied and relied upon the holding in *Shah*, ruling that a comparable anti-assignment clause was unenforceable under similar circumstances. *Henry Ford Health Sys v Everest Nat'l Ins Co*, __ Mich App __, __; __ NW2d __ (2018); slip op at 3.

-8-