FRANKENMUTH MUTUAL INSURANCE COMPANY v MARLETTE
HOMES, INC

Docket No. 181921. Submitted March 5, 1996, at Lansing. Decided September 27, 1996, at 9:25 A.M. Leave to appeal sought.

Frankenmuth Mutual Insurance Company, as subrogee of Terry and Darlene Weir, brought an action in the St. Clair Circuit Court against Marlette Homes, Inc., and Coachman Industries, Inc., Marlette's successor in interest, seeking damages resulting from a fire that occurred in 1991 and destroyed the Weirs' modular home, which was manufactured by Marlette and delivered to the Weirs' property in 1971. The fire was allegedly caused by a defective ceiling vent fan unit installed by Marlette as original equipment in the modular home. The trial court, James T. Corden, J., granted summary disposition for the defendants, finding that Marlette was a contractor for purposes of the statute of repose, MCL 600.5839; MSA 27A.5839, and that the modular home was an improvement to real property. The court held that the action was barred by the statute of repose because it was brought more than ten years after the time of occupancy of the completed improvement, use, or acceptance of the improvement. The plaintiff appealed.

The Court of Appeals *held*:

1. Statutes of repose are properly construed to advance the policy that they are designed to promote, which is to prevent stale claims and relieve defendants of the protracted fear of litigation.

2. The statute of repose defines "contractor" as "an individual, corporation, partnership, or other business entity which makes an improvement to real property." Under the ordinary meaning of the word "make," Marlette would clearly fall within the definition of contractor. However, the Legislature did not intend that result when it extended the statute's protection to contractors in 1985 PA 188 and clearly intended to protect from never-ending liability those who are in the business of constructing improvements. The statute is meant to protect providers of individual expertise who render particularized services for the construction of improvements to particular pieces of real property. Manufacturers of prefabricated, mass-produced products such as Marlette were not intended to be included within the statute's definition of contractor. The

defendants are not entitled to claim the statute of repose as an affirmative defense.

Reversed and remanded.

1. LIMITATION OF ACTIONS — STATUTE OF REPOSE.

Statutes of repose are properly construed to advance the policy they are designed to promote, which is to prevent stale claims and relieve defendants of the protracted fear of litigation.

2. LIMITATION OF ACTIONS — REAL PROPERTY — STATUTE OF REPOSE — CONTRACTORS.

The Legislature, in extending the protection of the statute of repose to contractors, clearly intended to protect from never-ending liability those who are in the business of constructing improvements to real property; the statute is meant to protect providers of individual expertise who render particularized services for the construction of improvements to particular pieces of real property, not manufacturers of prefabricated, mass-produced products (1985 PA 188, MCL 600.5839; MSA 27A.5839).

*Buesser, Buesser, Black, Lynch, Fryhoff & Graham, P.C.* (by *Michael J. Black* and *Kevin P. Kavanagh*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the defendants.

Before: MARILYN KELLY, P.J., and WAHLS and M. R. KNOBLOCK,* JJ.

MARILYN KELLY, P.J. In this subrogation action, plaintiff, Frankenmuth Mutual Insurance Company, appeals as of right from a grant of summary disposition for defendants Marlette Homes, Inc. and Coachman Industries, Inc. pursuant to MCR 2.116(C)(7). Plaintiff argues that defendants are not entitled to claim the statute of repose as an affirmative defense

---

* Circuit judge, sitting on the Court of Appeals by assignment.

where Marlette was not a contractor as defined by MCL 600.5839; MSA 27A.5839.[1] We reverse.

I

In 1971, Terry and Darlene Weir contracted to purchase a modular home manufactured by defendant Marlette. Defendant delivered the modular home to the Weirs' property and set it on its foundation. In 1991, fire destroyed the home. Pursuant to the terms of an insurance policy, plaintiff paid the Weirs $116,535.54 for the property damage and became subrogated to the Weirs' rights.

Plaintiff filed suit, claiming that the fire was caused by a defective ceiling vent fan unit installed by Marlette as original equipment in the modular home. Marlette moved for summary disposition pursuant to MCR 2.116(C)(7), based on Michigan's statute of repose, which provides, in pertinent part:

(1) No person may maintain any action to recover damages for any injury . . . arising out of the defective and unsafe condition of an improvement to real property . . . against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, more than 6 years after the time of occupancy of the completed improvement . . . . However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use,

---

[1] A statute of repose limits the liability of a party by setting a fixed time after the sale or first use of an item beyond which the party will not be held liable for defects in it or injury or damage arising from it. Unlike a statute of limitations, a statute of repose may bar a claim before an injury or damage occurs. *O'Brien v Hazelet & Erdal,* 410 Mich 1, 15; 299 NW2d 336 (1980); *Oole v Oosting,* 82 Mich App 291, 298-300; 266 NW2d 795 (1978).

or acceptance of the improvement. [MCL 600.5839; MSA 27A.5839.]

The trial court granted summary disposition to defendants. It held that Marlette was a contractor for purposes of the statute and that the modular home was an improvement to real property. Therefore, the ten year statute of repose barred plaintiff's suit.[2]

## II

### A

When reviewing a grant of summary disposition under MCR 2.116(C)(7) we accept the plaintiff's well-pleaded allegations as true and construe them in a light most favorable to the plaintiff. *Diversified Financial Systems, Inc v Schanhals*, 203 Mich App 589, 591; 513 NW2d 210 (1994). The motion should not be granted unless no factual development could provide a basis for recovery. *Grazia v Sanchez*, 199 Mich App 582, 584; 502 NW2d 751 (1993).

Whether a manufacturer of a product can claim the statute of repose as an affirmative defense is a question of first impression in this state. Plaintiff argues that, for guidance, we should look to other states which have already decided this issue under their statutes of repose. Decisions from other states can guide the interpretation of uniform laws. *SCD Chemical Distributors, Inc v Medley*, 203 Mich App 374, 378; 512 NW2d 86 (1994). However, we find that Michigan's statute of repose differs significantly from those adopted in other states.

---

[2] On appeal, plaintiff has abandoned the argument that the modular home was not an improvement to real property.

A majority of states' statutes of repose provide protection based on listed activities such as designing, planning, constructing, etc.[3] If a person or business entity is involved in one of the enumerated activities, the statute applies. Those states do not grant protection based on the classification of the business entity.[4] On the other hand, Michigan's statute of repose protects certain classes of individuals: licensed architects, professional engineers and contractors. Moreover, Michigan's statute of repose provides a unique definition of contractor, thereby rendering the statute non-uniform. Because Michigan's statute of repose differs from those of other states, we decline to look to other jurisdictions' interpretations of their statutes of repose for guidance. Instead we will resort to our rules of statutory construction to determine the intent of the Legislature in drafting Michigan's statute.

II

B

The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished. *Gross v General Motors Corp*, 448 Mich 147, 158-159; 528 NW2d 707 (1995). Where a statute is clear and unambiguous, judicial construction is precluded. *Mino v McCarthy*, 209 Mich App 302, 304; 530 NW2d 779 (1995). If judicial interpreta-

---

[3] See, e.g., Ky Rev Stat Ann 413.135; 42 Pa Cons Stat Ann 5536; Cal Civ Proc Code 337.1; Mass Ann Laws, ch 260, § 2B.

[4] While several other states protect classes of persons involved in the improvement of real property, their statutes protect those classes of individuals also according to the activity they perform, such as designing and planning. See, e.g., Ala Code 6-5-221; Colo Rev Stat 13-80-104.

tion is necessary, the Legislature's intent must be gathered from the language used, and the language must be given its ordinary meaning. In determining legislative intent, statutory language is given the reasonable construction that best accomplishes the purpose of the statute. *Id.* at 304-305. Statutes of limitation, along with statutes of repose, are construed to advance the policy that they are designed to promote. They prevent stale claims and relieve defendants of the protracted fear of litigation. *Witherspoon v Guilford*, 203 Mich App 240, 247; 511 NW2d 720 (1994).

In this case, defendants assert that they can claim the statute of repose as an affirmative defense, because Marlette was a contractor under the statute. Contractor is specifically defined as an "individual, corporation, partnership, or other business entity which makes an improvement to real property." MCL 600.5839(4); MSA 27A.5839(4).

The word "make" is not defined in the statute. Therefore, we may consult dictionary definitions to determine its ordinary meaning. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). *The Random House College Dictionary* (rev ed) defines "make" as: "to bring into existence by shaping or changing material, combining parts, etc. . . .; to produce; cause to exist; bring about." If we were to apply the ordinary meaning of the word "make" defendant would clearly fall within the definition of contractor.

However, we do not believe that the Legislature intended such a result. If a literal construction of a statute would produce absurd and unjust results clearly inconsistent with the purposes and policies of

the statute, we may depart from a literal construction. *Oberlin v Wolverine Gas & Oil Co*, 181 Mich App 506, 511; 450 NW2d 68 (1989). To ascertain the reasons for an act and the meaning of its provisions, this Court may look for guidance to the legislative history of an act, as well as to the history of the time during which the act was passed. *Great Lakes Steel Div, Nat'l Steel Corp v Dep't of Labor*, 191 Mich App 323, 327; 477 NW2d 124 (1991).

II

C

The original version of the legislation was enacted in 1967 in response to developments in the law of torts. *O'Brien v Hazelet & Erdal*, 410 Mich 1, 14; 299 NW2d 336 (1980). Because the privity doctrine was becoming unavailable as a defense against suits by injured third parties, persons taking part in design, construction and improvements to real property might have been forced to defend claims arising out of defects many years after construction of the improvements was completed. *Id.* Therefore, the Legislature chose to limit the liability of architects and engineers in order to relieve them of the potential burden of defending tort suits brought long after the completion of an improvement. *Id.*

In 1985, the Legislature extended protection to contractors. 1985 PA 188.[5] Contractors had argued that, without equal protection under the statute of repose, they were vulnerable to being sued in cases where an architect or engineer is actually at fault. See Senate Analysis, SB 278 (Third Analysis), December 20, 1985.

---

[5] The amendment took effect March 31, 1986.

In expanding protection to contractors, the Legislature clearly intended to protect from never-ending liability those who are in the business of constructing improvements. The statute is meant to protect providers of individual expertise who render particularized services for the construction of improvements to particular pieces of real property. Manufacturers of prefabricated, mass produced products were not intended to be included within the statute's definition of contractor. Had the Legislature intended to give increased protection to manufacturers, it could have clearly so stated. Because the modular home was a mass-produced product, and Marlette provided no individualized expertise to construct a particular improvement to it, defendants are not entitled to claim the statute of repose as an affirmative defense.[6]

Reversed and remanded. We do not retain jurisdiction.

---

[6] Moreover, allowing manufacturers such as defendant Marlette to claim the defense of the statute of repose would run counter to Michigan's product liability laws. Our Legislature has provided a cause of action against manufacturers of defective products under MCL 600.2945; MSA 27A.2945. This approach would impinge on the ability of consumers to pursue remedies under the product liability statute.