BOMBALSKI v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 220424. Submitted March 14, 2001, at Detroit. Decided September 25, 2001, at 9:00 A.M.

Bryan Bombalski brought an action in the Macomb Circuit Court against Anthony Perri and Auto Club Insurance Association. The plaintiff was injured when a vehicle driven by Perri struck the plaintiff's motorcycle while the plaintiff was stopped at a traffic sign. The plaintiff sought no-fault personal protection benefits from Auto Club, Perri's no-fault insurer. Because the policy covering Perri's vehicle provided for uncoordinated personal protection benefits, there is no dispute that the plaintiff is entitled to recover from Auto Club personal protection benefits for the medical care provided to the plaintiff for the injuries he suffered in the accident, even though the plaintiff had a health insurance policy that covered those medical expenses. When Auto Club, while acknowledging that the plaintiff was entitled to uncoordinated personal protection benefits for his medical expenses, asserted that its liability was limited to amounts that the plaintiff's health care insurer had actually paid for those services rather than the amounts billed by the health care providers, the plaintiff commenced his action. Perri was dismissed from the suit by stipulation of the parties. The court, Mary A. Chrzanowski, J., granted summary disposition for Auto Club, limiting plaintiff's recovery of personal protection benefits for medical care to the amounts that the plaintiff's health care insurer had paid to the health care providers. The plaintiff appealed.

The Court of Appeals *held*:

1. Subsection 3107(1)(a) of the no-fault act, MCL 500.3107(1)(a), provides that a no-fault insurer must pay personal protection benefits for all reasonable charges incurred for reasonably necessary products and services for an injured person's care, recovery, or rehabilitation. Because there is no dispute concerning whether the medical expenses at issue were reasonable or were for products or services reasonably necessary for the plaintiff's care or recovery, the issue before the trial court and on appeal is whether the amounts billed for the services rendered by the health care providers were "incurred" within the meaning of subsection 3107(1)(a),

even though the health care providers accepted lesser amounts from the health care insurer.

2. To "incur" an obligation means to be liable for the obligation or, in other words, to become legally obligated to pay the obligation. The satisfaction of the plaintiff's medical bills by his health care insurer for less than the full billed amount relieved the plaintiff of any responsibility or legal obligation to pay the health care providers any further amounts. Because the plaintiff bears no liability for the full amount of the bills initially submitted by the health care providers, he has not incurred those full charges, and, accordingly, the no-fault insurer is not obligated to pay the full billed amount pursuant to subsection 3107(1)(a). Limiting an injured person's recovery of personal protection benefits for medical expenses under an uncoordinated no-fault insurance policy to the amounts actually paid by the injured person's health care insurer rather than the amounts billed by those providing the medical services is consistent with the underlying legislative purpose of the no-fault act to check skyrocketing health care costs.

3. The question whether the plaintiff is entitled to statutory interest and attorney fees because the insurer failed to reimburse his medical expenses in a timely manner was not preserved for appellate review. In any event, the question presented is without merit.

Affirmed.

INSURANCE — NO-FAULT INSURANCE — PERSONAL PROTECTION BENEFITS — MEDICAL EXPENSES — UNCOORDINATED INSURANCE POLICIES.

A no-fault insurer's obligation for medical expenses under the personal protection benefit provisions of an uncoordinated no-fault policy does not encompass any amounts exceeding those that an insured's health care insurer actually paid in satisfaction of the insured's medical bills and for which the insured no longer bears any legal responsibility; limiting a no-fault insurer's liability under an uncoordinated no-fault policy to the amount actually paid by the health care insurer is consistent with the legislative purpose underlying the no-fault act to check skyrocketing health care costs (MCL 500.3107[1][a]).

*Turner & Turner, P.C.* (by *Matthew L. Turner*), for the plaintiff.

*Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *James P. O'Sullivan*) (*John A. Lydick*, of counsel), for the defendant.

Before: GAGE, P.J., and CAVANAGH and WILDER, JJ.

GAGE, P.J. Plaintiff appeals as of right from the trial court's order granting defendant Auto Club Insurance Association summary disposition pursuant to MCR 2.116(C)(10) with respect to a portion of plaintiff's claim for no-fault personal protection insurance benefits. The court's order limited plaintiff's recovery of uncoordinated personal protection benefits from defendant to amounts equivalent to that which plaintiff's health care insurer paid in satisfaction of plaintiff's medical bills. We affirm.

Plaintiff's complaint alleged that on August 5, 1997, Anthony Perri negligently drove his vehicle into plaintiff's motorcycle while plaintiff was stopped at a traffic sign in Sterling Heights. The police report of the accident summarized that as Perri's vehicle, which was traveling north, approached the intersection where plaintiff, who was traveling west, had stopped, Perri's vehicle veered to the right and left the roadway, struck a sign, hit plaintiff's motorcycle, "continued on thru [sic] a cyclone fence & a wood fence and came to rest in [a] residential yard." The police report determined that Perri "apparently had a seizure." Plaintiff averred that he suffered severe injuries in this collision, including several broken bones. Plaintiff's complaint set forth a count of negligence against Perri[1] and a count against defendant, claiming that defendant failed to timely pay plaintiff various no-fault benefits that it owed him.

---

[1] Because the parties eventually stipulated Perri's dismissal from the suit, "defendant" hereinafter refers solely to Auto Club Insurance Association.

The parties did not dispute that defendant, Perri's insurer, owed plaintiff some amount of personal protection benefits. MCL 500.3105(1), 500.3114(5). Furthermore, although plaintiff had a health insurance policy through Blue Cross and Blue Shield of Michigan (BCBSM) that covered his medical care, the parties did not dispute plaintiff's entitlement to uncoordinated personal protection benefits from defendant in addition to the coverage provided by BCBSM. See *Smith v Physicians Health Plan, Inc*, 444 Mich 743, 747; 514 NW2d 150 (1994) (explaining that "uncoordinated" means "the no-fault automobile insurance would pay benefits regardless of whatever other insurance the insured may have").

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10). In its motion, defendant opined that with respect to plaintiff's first-party claim for no-fault personal protection benefits, "the only issue in this case involves Plaintiff's claim for reimbursement of medical benefits and the rate of that reimbursement." Defendant acknowledged plaintiff's entitlement to uncoordinated personal protection benefits for his medical expenses, in addition to the medical care coverage plaintiff had received from his health insurer BCBSM, but disputed the appropriate amount of medical benefit reimbursement. Defendant suggested that plaintiff could receive uncoordinated no-fault personal protection benefits limited to the amounts that plaintiff's health care providers had accepted from BCBSM as full payment for the health care services they provided.

Plaintiff filed a cross motion for summary disposition, presumably pursuant to MCR 2.116(C)(10). Plaintiff asserted that according to the plain language

of subsection 3107(1)(a) of the no-fault insurance act, MCL 500.3107(1)(a), he should receive from defendant the reasonable amounts his health care providers charged for medical care, not the irrelevant, reduced amounts the health care providers accepted as full payment for the charges pursuant to negotiations with BCBSM. Plaintiff explained that under subsection 3107(1)(a), he incurred the full amounts charged by his health care providers when he accepted their services, and that subsequent negotiations by BCBSM of a payment price did not affect these incurred amounts.[2]

The trial court determined that the amounts of medical expenses incurred represented the amounts of money actually paid to the health care providers because "it would be a total windfall for someone to receive monies that was [sic] never paid to any health care . . . provider." The court granted defendant's motion for summary disposition limiting plaintiff's recovery of personal protection benefits to the amounts BCBSM paid plaintiff's health care providers, and denied plaintiff's motion. Apparently after this ruling, defendant paid plaintiff personal protection benefits in amounts equivalent to those that BCBSM had paid plaintiff's health care providers.

Plaintiff contends that the trial court misinterpreted MCL 500.3107(1)(a) when it construed the subsection to limit his recovery of personal protection benefits to the amounts that his health insurer had paid for medical services and ignored that plaintiff incurred the full amounts charged by the health care providers

---

[2] Plaintiff also argued that he should receive statutory interest and attorney fees for defendant's unreasonable refusal to pay his medical bills, but the trial court did not specifically address this claim.

when he accepted their services. We review de novo the trial court's summary disposition ruling. In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), we consider the pleadings and relevant documentary evidence in the light most favorable to the nonmoving party to determine whether the moving party is entitled to judgment as a matter of law or whether any genuine issue of material fact exists to warrant trial. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999).

The governing and disputed provision of the no-fault insurance act at issue provides in relevant part as follows:

> (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. . . . [MCL 500.3107.]

Because the parties challenge neither the reasonable necessity of plaintiff's medical care nor the reasonableness of the health care providers' charges for these services, our decision focuses on the statutory meaning of "incurred." *Moghis v Citizens Ins Co of America*, 187 Mich App 245, 247; 466 NW2d 290 (1990) (noting that the three requirements under subsection 3107(1)(a) include "that (1) the expense must be incurred, (2) the expense must have been for a product [or], service . . . reasonably necessary for the injured person's care, . . . and (3) the amount of the expense must have been reasonable").

We review de novo legal questions involving statutory interpretation. *In re MCI Telecommunications Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

"The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished. Where a statute is clear and unambiguous, judicial construction is precluded. If judicial interpretation is necessary, the Legislature's intent must be gathered from the language used, and the language must be given its ordinary meaning. In determining legislative intent, statutory language is given the reasonable construction that best accomplishes the purpose of the statute." [*Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998), quoting *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 219 Mich App 165, 169-170; 555 NW2d 510 (1996) (citations omitted).]

When, as in this case, the statute does not expressly define a term at issue, a court may consult a dictionary to assist in determining the meaning of the word. *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996).

This Court in *Shanafelt, id.* at 636-638, addressed the defendant's arguments that certain medical expenses were never incurred as contemplated by subsection 3107(1)(a). The Court noted that *Random House Webster's College Dictionary* (1995) defined "incur" as " 'to become liable for.' " *Shanafelt, supra* at 638. See also Black's Law Dictionary (7th ed), p 771, which similarly defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)." The Court rejected the defendant's suggestion that the plaintiff never incurred medical expenses because the plaintiff's health insurer directly paid her medical bills. *Shanafelt, supra* at 636-637. After quoting the definition of incur found in *Random House Webster's*, the Court reasoned that "[o]bviously, plaintiff became liable for her medical expenses when she accepted medical treatment." *Id.* at 638.

Plaintiff submits that he likewise became liable for the amounts charged by his health care providers when he accepted their services and that consequently he incurred the full amounts charged. Plaintiff's claim does not persuade us, however, because plaintiff overlooks the significance of "liable," which means "[r]esponsible or answerable in law; legally obligated." Black's Law Dictionary, *supra* at 927. The satisfaction of plaintiff's medical bills by BCBSM through payment of less than the amounts charged by the providers relieved plaintiff of any responsibility or legal obligation to pay the providers further amounts exceeding those proffered by BCBSM and accepted by plaintiff's health care providers. Because plaintiff bears no liability for the full medical service amounts initially charged by his health care providers, he has not *incurred* these full charges. See *Moghis, supra* at 249 quoting from *Manley v DAIIE*, 425 Mich 140, 159; 388 NW2d 216 (1986), that an insurer paying benefits pursuant to § 3107 need not pay any amount " 'except upon submission of evidence that services were actually rendered and of the actual cost expended.' "

We find in *Dean v Auto Club Ins Ass'n*, 139 Mich App 266; 362 NW2d 247 (1984), further support for our interpretation limiting incurred medical expenses to those amounts actually paid or that the no-fault insured remains legally obligated to pay. In *Dean*, this Court rejected the plaintiff chiropractors' attempt to recover from the no-fault insurer the differences between the chiropractors' customary charges for services they provided individuals covered by no-fault insurance and the amounts that the chiropractors had accepted from BCBSM as payment in full for their services. *Id.* at 268-269, 271. The Court examined MCL 500.3109a, which authorizes no-fault insurers to offer

reduced rate personal protection insurance benefits coordinated with the no-fault insured's existing health insurance, and concluded that the public policy supporting this subsection precluded the plaintiffs' effort to recover their full, customary charges. *Dean, supra* at 271-273. The Court observed that § 3109a was intended to contain " ' "*skyrocketing hospital and medical costs . . . with health and accident as the primary coverage since these policies, like the Blue Cross/Blue Shield plans, have established limits on their reimbursement of doctor and hospital expenses*," ' " and noted that " ' "*[a] physician who knows his or her patient has unlimited medical coverage has no incentive to keep the doctor bill at a minimum*." ' " *Id.* at 273, quoting *LeBlanc v State Farm Mut Automobile Ins Co*, 410 Mich 173, 196-197; 301 NW2d 775 (1981), quoting House Insurance Committee Analysis, HB 5724, February 27, 1974 (emphasis added in *Dean*).

Although this Court's analysis in *Dean* involved a different type of claim, one made by health care providers, and a different section of the no-fault act, we find instructive in this case the Court's following observations:

> We think the above-emphasized language [from the analysis of 1974 HB 5724] is clear that the legislative mandate (embodied in § 3109a) requiring insurance companies to offer coordination-of-benefits clauses to their insureds contemplated the very situation presented here and sought to place a check on the health care providers who have "no incentive to keep the doctor bill at a minimum." In other words, *the Legislature did not intend to allow participating health care providers to seek additional reimbursement from no-fault insurers over and above the BCBSM reimbursement rate. The no-fault act was as concerned with the rising cost of health care as it was with providing*

> *an efficient system of automobile insurance.* And there is
> little doubt that the legislation governing health care corpo-
> rations (BCBSM), MCL 550.1101 *et seq.* . . . , had as its chief
> concern the affordability of health care. . . . Accordingly,
> plaintiffs may not participate in the BCBSM health care plan
> and then frustrate the legislative attempt to contain health
> care costs by simply seeking payment on the excess from
> no-fault insurers. [*Dean, supra* at 273-274 (emphasis
> added).]

Our adoption in this case of plaintiff's suggested inter-
pretation of what are incurred charges within subsec-
tion 3107(1)(a), which proposed interpretation en-
compasses not only the amounts BCBSM paid in full
satisfaction for the health care services plaintiff
received but also the amounts of the providers' initial
charges above the rates paid by BCBSM, plainly would
frustrate the legislative purpose underlying the no-
fault act to check skyrocketing health care costs and
would afford plaintiff a windfall above his entitlement
to uncoordinated, double benefits for any inflated
medical charges he received.[3]

---

[3] We note that plaintiff misplaces his reliance on *Munson Medical
Center v Auto Club Ins Ass'n,* 218 Mich App 375; 554 NW2d 49 (1996), and
*Hofmann v Auto Club Ins Ass'n,* 211 Mich App 55; 535 NW2d 529 (1995).
The no-fault insurer in each of these cases sought to limit the amounts it
paid to medical providers according to fee schedules utilized by other
insurance companies or under the Worker's Disability Compensation Act.
*Munson, supra* at 378; *Hofmann, supra* at 114. Both cases involved the
interpretation of the term "customary charges" within MCL 500.3157. This
Court in each case concluded that in situations where no other health or
accident coverage existed, the no-fault insurer could not refer to amounts
paid by other insurance companies, Medicare, Medicaid or worker's com-
pensation as a benchmark for determining the amounts of its own pay-
ments of customary charges under § 3157. This Court observed that while
other fee schedules were limited by contract or various federal and state
statutes, the no-fault statute governed no-fault carriers' payments and
required them to pay amounts customarily charged in cases not involving
insurance. *Munson, supra* at 383-385; *Hofmann, supra* at 113-114.

The present case plainly involves a different statutory section and term
and is further distinguishable on the basis that here other insurance cov-

We therefore conclude that in light of the ordinary meaning of incurred and the public policy behind the no-fault act, incurred charges within MCL 500.3107(1)(a) do not encompass any amounts (1) exceeding those that plaintiff's health insurer actually paid in satisfaction of plaintiff's medical bills and (2) for which plaintiff no longer bears legal responsibility.

Plaintiff next argues that defendant's failure to timely reimburse his medical expenses entitles him to statutory interest and attorney fees. We decline to address this unpreserved issue, which the trial court did not expressly consider. *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 98; 494 NW2d 791 (1992). Furthermore, to the extent that plaintiff suggests that defendant untimely and unreasonably failed to pay him the difference between the full amounts charged by his health care providers and the payments in satisfaction made by BCBSM, we find, in light of our foregoing conclusion, that plaintiff's argument is without merit.[4]

Affirmed.

---

erage does exist and has afforded full satisfaction of the medical providers' bills.

[4] We additionally note that to the extent that plaintiff suggests defendant untimely failed to provide him any reimbursement whatsoever for his medical bills, plaintiff fails to provide in his brief on appeal sufficient facts supporting his position. Plaintiff asserts that he "has submitted all of the billing," but fails to explain precisely when he provided defendant each of his many medical bills, or exactly how long thereafter defendant left them unpaid. See *Great Lakes Div of Nat'l Steel Corp v City of Ecorse,* 227 Mich App 379, 424; 576 NW2d 667 (1998) ("A party may not leave it to this Court to search for a factual basis to sustain or rejects its position.").