*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LENA BROWN,

       Plaintiff-Appellant,

v

ANTHONY AYERS and LEGACY MEDICAL
TRANSPORTATION LLC,

       Defendants,

and

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

       Defendant/Cross-Plaintiff,

and

BERKSHIRE HATHAWAY HOMESTATE
INSURANCE COMPANY,

       Defendant/Cross-Defendant-Appellee.

UNPUBLISHED
February 22, 2024

No. 363949
Wayne Circuit Court
LC No. 18-013956-NI

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

       In this action involving the no-fault act, MCL 500.3101 *et seq.*, plaintiff challenges the trial court's order denying her motion for declaratory relief. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

       This is not the first time this case has been before this Court. See *Brown v Ayers*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 354730). The factual circumstances of the underlying motor vehicle accident are not in dispute

-1-

for purposes of the instant appeal, and the circumstances of the accident were succinctly stated by this Court in the previous appeal as follows:

> On January 8, 2018, plaintiff was walking on a crosswalk, when she was struck by a vehicle owned by defendant, Legacy Medical Transportation, LLC, (Legacy), and driven by defendant, Anthony Ayers (Ayers). Plaintiff did not identify any insurer for the vehicle that hit her. Therefore, on March 16, 2018, she applied for personal protection insurance (PIP) benefits with the Michigan Assigned Claims Plan (MACP). MACP assigned the claim to [defendant/cross-plaintiff Citizens Insurance Company of the Midwest (Citizens)] and Citizens initially paid over $140,000 in benefits. [*Brown*, unpub op at 2.][1]

On October 26, 2018, plaintiff filed suit against Ayers, Legacy, and Citizens. She alleged negligence-related claims against Ayers and Legacy, and plaintiff sought first-party no-fault benefits from Citizens. It was subsequently discovered that Ayers and Legacy actually had no-fault insurance coverage provided by defendant/cross-defendant Berkshire Hathaway Homestate Insurance Company (Berkshire). Berkshire was added to this action by way of a first amended complaint filed by plaintiff on May 7, 2019, and a cross-claim filed by Citizens.

Citizens subsequently moved for summary disposition on its cross-claim against Berkshire, arguing that the undisputed evidence showed that Berkshire was the insurer of Legacy, which was the owner and registrant of the van that allegedly struck plaintiff, and that Berkshire was therefore highest in priority under MCL 500.3115(1)(a) for payment of plaintiff's PIP benefits. The trial court granted Citizens' motion, determined that Berkshire was the higher insurer in the order of priority, and dismissed Citizens with prejudice. This Court affirmed this order on plaintiff's interlocutory appeal. *Brown*, unpub op at 2-3, 6.

Berkshire also filed a motion for partial summary disposition, arguing that it was not liable for any benefits incurred before May 6, 2018, pursuant to the one-year-back rule in MCL 500.3145. The trial court granted this motion, barring plaintiff's claims against Berkshire for no-fault benefits incurred before May 6, 2018.

During the course of the proceedings below, an issue arose regarding liability for medical expenses related to the accident that were initially paid by plaintiff's Employee Retirement Income Security Act, 29 USC 1001 *et seq*., (ERISA) health benefits plan. It is the parties' dispute over this issue that forms the central basis for the instant appeal. Plaintiff submitted evidence that her ERISA plan, which was administered by UnitedHealthcare, had paid approximately $165,000 in medical bills for treatment she received for her injuries from the accident between January 8, 2018, and approximately May 6, 2018. There was also evidence that the ERISA plan held a lien for reimbursement of that amount based on a coordination-of-benefits provision in the plan, which provided in relevant part as follows:

---

[1] Plaintiff did not have no-fault insurance of her own or through a household member. *Brown*, unpub op at 3.

The Plan has a right to subrogation and reimbursement.

Subrogation applies when the plan has paid Benefits on your behalf for a Sickness or Injury for which a third party is alleged to be responsible. The right to subrogation means that the Plan is substituted to and shall succeed to any and all legal claims that you may be entitled to pursue against any third party for the Benefits that the Plan has paid that are related to the Sickness or Injury for which a third party is alleged to be responsible.

* * *

The right to reimbursement means that if a third party causes or is alleged to have caused a Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury.

* * *

• The Plan has a first priority right to receive payment on any claim against a third party before you receive payment from that third party. Further, the Plan's first priority right to payment is superior to any and all claims, debts or liens asserted by any medical providers, including but not limited to Hospitals or emergency treatment facilities, that assert a right to payment from funds payable from or recovered from an allegedly responsible third party and/ or insurance carrier.

• The Plan's subrogation and reimbursement rights apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, no matter how those proceeds are captioned or characterized. Payments include, but are not limited to, economic, non-economic, and punitive damages. The Plan is not required to help you to pursue your claim for damages or personal injuries and no amount of associated costs, including attorneys' fees, shall be deducted from the Plan's recovery without the Plan's express written consent. No so-called "Fund Doctrine" or "Common Fund Doctrine" or "Attorney's Fund Doctrine" shall defeat this right.

• Regardless of whether you have been fully compensated or made whole, the Plan may collect from you the proceeds of any full or partial recovery that you or your legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment, no matter how those proceeds are captioned or characterized. Proceeds from which the Plan may collect include, but are not limited to, economic, non-economic, and punitive damages. No "collateral source" rule, any "Made-Whole Doctrine" or "Make-Whole Doctrine," claim of unjust enrichment, nor any other equitable limitation shall limit the Plan's subrogation and reimbursement rights.

After this Court issued its opinion resolving the previous interlocutory appeal, plaintiff filed a motion for declaratory relief in the trial court, in which she advanced a new theory for determining that Berkshire was obligated to reimburse plaintiff, as a PIP benefit, for the amount

-3-

represented by UnitedHealthcare's lien and any other amounts she might be required to reimburse her ERISA plan,[2] for charges related to the January 8, 2018 accident. Plaintiff now argued that this expense was not "incurred" any earlier than September 17, 2018, when UnitedHealthcare asserted its right to reimbursement under the ERISA plan.[3] According to plaintiff, she did not incur this expense before September 17, 2018, because she did not have a legal obligation to pay the charge until UnitedHealthcare made its demand asserting its right to reimbursement. Plaintiff had apparently settled her claims against defendants Ayers and Legacy, and she also settled with UnitedHealthcare for $110,280.06. She apparently paid this settlement from funds recovered in her settlement with Ayers and Legacy.

In her motion, plaintiff sought a declaration that Berkshire was obligated to reimburse this amount to plaintiff as a PIP benefit, as well as any other amounts she might be required to reimburse her ERISA plan for charges related to the January 8, 2018 accident. Although plaintiff did not directly challenge the trial court's order limiting Berkshire's liability to expenses incurred after May 6, 2018, plaintiff argued that this ruling did not preclude plaintiff from obtaining reimbursement for the amount represented by UnitedHealthcare's lien since that expense was "incurred" after May 6, 2018.

In response, Berkshire maintained that the expenses for which UnitedHealthcare was reimbursed by plaintiff represented expenses for treatment plaintiff received before May 7, 2018, and that plaintiff was therefore barred from obtaining reimbursement from Berkshire for those expenses. Berkshire argued that these expenses were incurred on the dates plaintiff received the services and not on the date when plaintiff received notice of UnitedHealthcare's lien.

The trial court ruled that the expenses were incurred at the time plaintiff received medical treatment and denied plaintiff's motion in an August 12, 2022 order. On November 11, 2022, the trial court entered a stipulated order stating that plaintiff's complaint against Berkshire "is Dismissed with Prejudice consistent with the terms of the release and without costs to any party." The order further stated, "nothing in this Order shall preclude Plaintiff from appealing the Court's Order of August 12, 2022, only." (Order, 11/11/2022, LCF.)

This appeal followed.

## II. STANDARD OF REVIEW

The trial court stated that it was treating plaintiff's motion as one for declaratory relief *or* summary disposition. The decision to grant declaratory relief is within the sound discretion of the trial court. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 126; 715 NW2d 398 (2006). A trial court's summary disposition ruling, as well as matters of statutory

---

[2] We refer to the ERISA plan and UnitedHealthcare interchangeably for purposes of the reimbursement lien, following what appears to be the convention followed by the parties in this case.

[3] Plaintiff attached this letter to her motion.

-4-

interpretation and other issues of law, are reviewed de novo. *Id*. at 125-126; *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 482; 673 NW2d 739 (2003).

## III. ANALYSIS

As an initial matter, we first must address Berkshire's argument that this Court does not have jurisdiction over this appeal. Berkshire argues that the November 11, 2022 order from which plaintiff appeals was not a final order because no order has been entered by the trial court formally dismissing Citizens' cross-claim against Berkshire and the November 11, 2022 order therefore did not "dispose[] of all the claims and adjudicate[] the rights and liabilities of all the parties." MCR 7.202(6)(a)(i). Berkshire neglects the fact that the trial court entered an order on March 5, 2020, that granted Citizens' motion for summary disposition *on its cross-claim against Berkshire*. This ruling has already been affirmed on appeal by this Court. The trial court was not incorrect to characterize its November 11, 2022 order as a final order that disposed of all the remaining claims and adjudicated the rights and liabilities of all the parties. MCR 7.202(6)(a)(i). This Court has jurisdiction over this appeal by right. MCR 7.203(A)(1). Moreover, even if the November 1, 2022 order is not properly considered a final order, we would treat the claim of appeal as an application for leave to appeal and grant it. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

Turning to the substantive issues presented on appeal, plaintiff argues that the trial court erred by determining that the full $110,280.06 that plaintiff was required to reimburse UnitedHealthcare for expenses related to the January 8, 2018 accident could not be recovered from Berkshire, based on the trial court's earlier ruling regarding the application of the one-year-back rule, because the expenses included in the $110,280.06 repayment were "incurred" when plaintiff received the respective services. Plaintiff contends that the trial court should have instead ruled that the total amount was "incurred" on September 17, 2018, when UnitedHealthcare formally asserted its rights to reimbursement for those expenses pursuant to the ERISA plan.

Under § 3107(1)(a) of the no-fault act, as it existed at the time of the subject accident in this case, PIP benefits may be recovered for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a), as amended by 2012 PA 542.[4] As was established in this litigation, Berkshire was the highest no-fault insurer in the order of priority under the former version of MCL 500.3115(1), which provided that "a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from . . . (a) Insurers of owners or registrants of motor vehicles involved in the

---

[4] The subject accident in this case occurred on January 8, 2018. Significant amendments were made to the no-fault act that became effective in 2019. See generally 2019 PA 21. Whether these amendments are retroactive is not at issue in this appeal. "Statutes and amendments to statutes are presumed to operate prospectively." *Spine Specialists of Mich, PC v MemberSelect Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358296); slip op at 3 (quotation marks and citation omitted). Unless otherwise noted, we will refer to the pre-amendment versions of the applicable statutes in the no-fault act.

accident[, or] (b) Insurers of operators of motor vehicles involved in the accident."[5]  Plaintiff does not challenge this ruling here.

Additionally, pursuant to the one-year-back rule in MCL 500.3145(1), the trial court previously ruled that based on the date on which plaintiff added Berkshire to her amended complaint in this case, plaintiff could not recover any PIP benefits from Berkshire for expenses incurred before May 6, 2018.  Under former MCL 500.3145(1), a claimant could not "recover benefits for any portion of the loss *incurred* more than 1 year before the date on which the action was commenced."[6] (Emphasis added.)  Plaintiff also does not challenge on appeal the trial court's ruling regarding the general application of the one-year-back rule to her claims against Berkshire based on the date that Berkshire was added to this litigation.

Instead, plaintiff argues that the trial court erred by concluding that the amount represented by UnitedHealthcare's lien (and that plaintiff was required to reimburse UnitedHealthcare under the ERISA plan) was "incurred" at the time the services were provided, which had the effect of preventing plaintiff for recovering from Berkshire any amounts that were paid by UnitedHealthcare for services that were provided before May 6, 2018.  Plaintiff contends that the amount of the lien was actually incurred by her as an expense no earlier than September 17, 2018, when UnitedHealthcare asserted its right to reimbursement.  Hence, the issue becomes *when* these expenses were incurred.

"Personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but *as the allowable expense*, work loss or survivors' loss *is incurred*." MCL 500.3110(4) (emphasis added).  In *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996), after observing that the no-fault act does not define the term "incurred," this Court consulted a dictionary and determined that the "primary definition of the word 'incur' is 'to become liable for.' "  (Citation omitted.)  In a subsequent case, this Court further refined this definition by noting that "liable" means "[r]esponsible or answerable in law; legally obligated." *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 543; 637 NW2d 251 (2001) (quotation marks and citation omitted; alteration in original).  Our Supreme Court, also relying on a dictionary, defined "incur" for purposes of the no-fault act to mean "[t]o become liable or subject to, [especially] because of one's own actions." *Proudfoot*, 469 Mich at 484 (quotation marks and citation omitted; alterations in original).

This Court expressly stated in *Shanafelt* that for purposes of the no-fault act, the injured person "became liable for her medical expenses when she accepted medical treatment." *Shanafelt*, 217 Mich App at 638.  Hence, plaintiff alleges, she was not legally obligated for these costs until

---

[5] As this Court has explained with respect to the former version of MCL 500.3115(1), "[p]ursuant to MCL 500.3115(1)(a), a pedestrian who is not covered under his own insurance policy or a policy issued to a spouse or relative must first seek personal protection insurance benefits from the '[i]nsurers of owners or registrants of motor vehicles involved in the accident.' " *Pioneer State Mut Ins Co v Titan Ins Co*, 252 Mich App 330, 335-336; 652 NW2d 469 (2002) (second alteration in original).

[6] This rule is now contained in MCL 500.3145(2), as amended by 2019 PA 21.

UnitedHealthcare demanded reimbursement from her. However, this Court in *Shanafelt* rejected the same argument under almost identical circumstances:

> Obviously, plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses. Therefore, one may not reasonably maintain that plaintiff did not incur expenses. [*Id*.]

Accordingly, under *Shanafelt*, plaintiff incurred the expenses for which she sought no-fault benefits from Berkshire on the dates she received medical treatment, notwithstanding the fact that UnitedHealthcare initially paid those bills. *Id*. Plaintiff is barred, pursuant to the one-year-back rule in former MCL 500.3145(1) and the trial court's previous ruling on this issue, from recovering PIP benefits from Berkshire for expenses incurred prior to May 6, 2018. Therefore, plaintiff is barred from recovering the amount at issue that plaintiff reimbursed UnitedHealthcare to the extent that amount represented charges for medical treatment that occurred before May 6, 2018, because those expenses were "incurred" at the time of treatment for purposes of the no-fault act. *Shanafelt*, 217 Mich App at 638.

Plaintiff's reliance on our Supreme Court's decision in *Proudfoot* to support a contrary conclusion is misplaced. In *Proudfoot*, the plaintiff's injuries from a motor vehicle accident resulted in the amputation of one of the plaintiff's legs and the need for the use of a wheelchair. *Proudfoot*, 469 Mich at 478. Following the recommendations of an occupational therapy report, the plaintiff consulted an architect to prepare plans and provide a cost estimate for significant home modifications. *Id*. Plaintiff sought no-fault benefits from the defendant insurer for the estimated cost of the home modifications. *Id*. at 477-478. Our Supreme Court held that the defendant no-fault insurer could not be ordered to pay these future home modification costs "[b]ecause the expenses in question were not yet 'incurred.' " *Id*. at 484. The Court reasoned:

> A trial court may enter "a declaratory judgment determining that an expense is both necessary and allowable and the amount that will be allowed[, but s]uch a declaration does not oblige a no-fault insurer to pay for an expense until it is actually incurred." At the time of the judgment, plaintiff had not yet taken action to become liable for the costs of the proposed home modifications. [*Id*. (citation omitted; alteration in original).]

In *Proudfoot*, the plaintiff had not yet become liable for the costs of the proposed home modifications because she had not yet paid for the work to be performed, entered into a contract to have the work performed, or otherwise acted to actually incur the expense. In contrast, plaintiff in this case undisputedly received medical treatment for which she was charged. Hence, the question in instant case is not *whether* the expenses were incurred;[7] the issue presented is merely

---

[7] Clearly, the expenses were incurred in this case.

one of *timing* and determining *when* the expenses were incurred. Our Supreme Court's decision in *Proudfoot* therefore does not change our analysis.

Plaintiff also relies on *Palmquist v State Farm Mut Auto Ins Co*, unpublished opinion and order of the United States District Court for the Western District of Michigan, issued November 5, 2015 (No. 2:15-CV-33); 2015 WL 12591759. "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004), cert den 543 US 870 (2004).

We do not find *Palmquist* persuasive. The district court in *Palmquist* concluded that the plaintiff did not "incur" his medical expenses at the time of treatment because the plaintiff's ERISA plan paid those medical bills and, further, that the plaintiff "incurred" the expense when the ERISA plan sent a letter demanding reimbursement for the medical expenses. Obviously, that conclusion, had it been adequately supported by relevant legal authority, would help plaintiff's argument in this case.

However, the district court's conclusion is directly contrary to this Court's holding in *Shanafelt* that for purposes of the no-fault act, an injured party becomes liable for medical expenses at the time medical treatment is provided and that the injured person's obligation to pay those medical expenses is not altered by the fact that the person "had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf." *Shanafelt*, 217 Mich App at 638. The district court in *Palmquist* did not cite or discuss this rule from *Shanafelt* (or any other case applying this same rule), nor did the court cite any authority supporting its apparent conclusion that an injured person somehow does not "incur," or become liable for, the medical expenses at the time of treatment if those bills are paid by an ERISA plan rather than a "traditional" health insurer. Hence, the district court's lack of legal analysis and citations to its analysis coupled with its conclusory reasoning are unpersuasive regarding the time at which medical expenses are "incurred" for purposes of the no-fault act when an injured party's medical expenses are initially paid by an ERISA plan. We therefore refuse to follow *Palmquist*.

Based on our conclusion regarding the time at which these expenses were incurred, and the dispositive effect of that conclusion under the circumstances as they have been presented to us in this appeal, there is no need for further discussion of the numerous legal complexities surrounding ERISA plans in this context. See generally *Auto Club Ins Ass'n v Frederick & Herrud, Inc*, 443 Mich 358; 505 NW2d 820 (1993).

Affirmed. Defendant having prevailed is entitled to costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra