*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DELMOND RICHARDS and KERI PECK-COUSINEAU, as Personal Representative,

Plaintiff-Appellant,

and

REBECCA RICHARDS,

Intervening Plaintiff,

v

GRANGE INSURANCE COMPANY OF MICHIGAN,

Defendant-Appellee.

UNPUBLISHED
June 09, 2025
2:25 PM

No. 369905
Oakland Circuit Court
LC No. LC No. 2021-188404-NF

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this first-party action under Michigan's no-fault act, MCL 500.3101 *et seq*., plaintiff, the Estate of Delmond Richards, challenges the trial court's order partially granting summary disposition in favor of defendant, Grange Insurance Company, under MCR 2.116(C)(10).[1] For the reasons stated opinion, we affirm in part and reverse the trial court's order granting summary disposition.

---

[1] In a subsequent stipulated final order, the trial court dismissed plaintiff's remaining claims. That order preserved plaintiff's right to appeal the order granting Grange partial summary disposition under MCR. 2.116(C)(10). Accordingly, plaintiff's appeal is by right.

## I.  BASIC FACTS

On June 12, 2020, Delmond Richards crashed the vehicle he was driving into another vehicle at an intersection.  Richards appears to have sustained significant injuries as a result of the crash, including multiple rib fractures and a severe traumatic brain injury that required a lengthy hospitalization and brain surgery to reduce swelling.[2]  Thereafter, he was discharged to DMC Rehabilitation Institute of Michigan, which provided intensive inpatient rehabilitation services for approximately five weeks.  Richards then underwent a second brain surgery at DMC Harper Hutzel Hospital.  On May 21, 2021, Richards died due to complications related to his traumatic brain injury.

At the time of the crash, Richards had a no-fault automobile insurance policy through Grange that provided uncoordinated benefits.[3]  In addition, he had a health insurance policy through Blue Cross and Blue Shield of Michigan (BCBS) that provided coordinated benefits.  In the complaint, plaintiff alleges that Grange did not pay personal protection insurance (PIP) benefits on Richards' behalf.

Following discovery, Grange moved for partial summary disposition under MCR 2.116(C)(10).  As relevant to this appeal, Grange argued that plaintiff's claims related to Spectrum Butterworth Hospital, DMC Harper Hutzel Hospital, and DMC Rehabilitation Institute of Michigan should be dismissed because they did not reflect that Richards had "incurred" any expenses.  In support, Grange submitted bills and billing ledgers from those providers.

The documentation reflected that the Spectrum hospital bill totaled $451,112.43.  At some point, that bill was submitted to BCBS, which appears to have paid some portion of the bill before performing a "clawback" of the money paid apparently because BCBS believed that its policy was "secondary" to Medicare.  Medicare, in turn, made a conditional payment on that bill in the amount of $109.067.71.[4]  The section of Spectrum's billing ledger listing payments and adjustments reflects BCBS's payments and "clawback" and the Medicare payment of $109,067.71.  In addition, it states:

| 01/31/23 | Generic AUTO Non Billable | -56.00 |
| 01/31/23 | Generic AUTO Legal Write Off | -451,112.43 |

---

[2] Grange contends that Richards' medical record suggest that he "sustained a stroke, or other event, prior to the accident which may have been the reason" for the crash.  However, summary disposition was not granted for this reason.  Accordingly, any issues related to causation are not before this Court.

[3] An uncoordinated auto insurance policy means that "the no-fault automobile insurance would pay benefits regardless of whatever other insurance the insured may have." *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 539; 637 NW2d 251 (2001) (quotation marks and citation omitted).

[4] See 42 USC § 1395y(b)(2)(B)(*i*) and (*ii*).

07/16/21       Medicare Contractual Adjustment (Insurance)     -340,636.72

Ultimately, the ledger reflects that the total hospital payments and adjustments resulted in a negative balance of $902,280.86.

Next, the documentation submitted for the DMC Rehabilitation Institute of Michigan included a bill that totaled $225,336.48. The billing ledger from DMC Rehabilitation Institute of Michigan shows that there were payments by BCBS, but that BCBS recovered those payments. And, although it reflects that there were significant charges, the ledger ultimately concludes with the directive "Pay This Amount 0.00."

Finally, the DMC Harper Hutzel Hospital bill totaled $118,020.90. Again, BCBS appears to have made payments and then recovered those payments. And, according to a ledger of "current charges, payments and adjustment" related to Richards' treatment, the "balance forward" is listed as "0.00" and each document concludes by stating "PAY THIS AMOUNT 0.00."[5]

In response to the motion for partial summary disposition, plaintiff contended that the Spectrum ledger showed that the charges had been incurred. And, as it relates to the DMC Rehabilitation of Michigan Institute and the Harper Hutzel bills, plaintiff attached an affidavit from Andrea Prevost, a billing representative for DMC. In her affidavit, Prevost explained that BCBS had made payments on the two accounts, but that it had recovered those amounts. She further averred:

> 6. At this time, DMC has not received any payment for Delmond Richards' admissions through DMC-Rehabilitation Institute of Michigan (Account Number #############) and DMC-Harper Hutzel Hospital (Account Number #############).

> 7. It is the practice of DMC to pursue payment of any available insurance or third party payor before initiating any collection effort from the patient.

> 8. At this time DMC is expecting payment for Delmond Richards' admissions through DMC-Rehabilitation Institute of Michigan (Account Number #############) and DMC-Harper Hutzel Hospital (Account Number #############) from Grange Insurance under Claim Number #############, Delmond Richards' no-fault insurer not patient Delmond Richards personally or his estate.

---

[5] Grange also submitted explanation of benefits (EOBs) from BCBS related to Richards' treatment with the various medical providers. However, the EOBs were prepared by BCBS, not the medical providers. Moreover, each EOB expressly states that this is "not a bill." Accordingly, the EOBs are not relevant to a determination as to whether Richards has any liability relative to the medical providers.

9. I am aware of an itemized statement to Delmond Richards, advising the patient to "please pay $0.00." This is does not mean DMC has no expectation of payment for the bill incurred by Delmond Richards through DMC-Rehabilitation Institute of Michigan (Account Number ############) and DMC-Harper Hutzel Hospital (Account Number ############). At this time, DMC is expecting payment from Grange Insurance for these bills, not Mr. Richards or his estate.

Notwithstanding Prevost's affidavit, plaintiff argued that it did not have to show that it had "a legal responsibility to pay" either BCBS or the medical providers. Instead, plaintiff suggested that it became liable for Richards' medical expenses when he received treatment.

In its reply brief, Grange contended that Prevost's affidavit should be stricken because it was a "self-serving" affidavit that was drafted to create a fact question so as to avoid summary disposition and because she was not listed on the witness list, previously identified, or disclosed to Grange. Grange further asserted that, although Prevost averred that payment was expected from Grange, no bills had been submitted by the medical providers to Grange for payment.

Following oral argument, the trial court entered an opinion and order granting partial summary disposition in Grange's favor. The court reasoned:

Considering the evidence, briefs, affidavits,[6] and oral argument, even when viewed in the light most favorable to Plaintiff as a non-moving party, the Court finds it appropriate to grant Defendants [sic] motion for summary disposition. The evidence before the Court reflects that Plaintiff is not liable for charges for services provided by Spectrum Butterworth Hospital, DMC Harper Hutzel, [and] DMC Rehabilitation Institute of Michigan[.] Uncontroverted billing ledgers reflect Plaintiff is liable to pay $0 to these providers. Despite Plaintiff's position otherwise, the Court finds Plaintiff no longer bears legal responsibility for these charges . . . .

This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred by granting defendant's motion for partial summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

---

[6] Notably, the trial court did not strike Prevost's affidavit, which was the only affidavit submitted in support of the motions. Instead, it explicitly considered it in its opinion granting partial summary disposition.

-4-

A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

## B. ANALYSIS

Michigan's no-fault act, MCL 500.3101 et seq., "provides a comprehensive scheme for payment, as well as recovery, of certain 'no-fault' benefits, including [PIP] benefits." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 479; 960 NW2d 186 (2020) (quotation marks and citation omitted). The no-fault act was intended "to provide individuals injured in motor vehicle accidents assured, adequate and prompt reparation for certain economic losses," and "provide these benefits at the lowest cost to the individual and the system." *Id*. (quotation marks and citation omitted). Under MCL 500.3105(1), "[a]n insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." In turn, MCL 500.3107(1)(a) provides that personal protection insurance (PIP) benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." At issue in this case is whether the medical expenses associated with Richards' treatment at Spectrum Hospital, DMC Rehabilitation Institute of Michigan, and Harper Hutzel Hospital were "incurred."

Numerous cases address what constitutes an "incurred" expense. An expense is "incurred" when the insured becomes liable to pay that expense. *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003). In turn, "[a]n insured becomes liable for an expense when he accepts the medical treatment for which he (or his insurer) is being charged." *Clark v Al-Amin*, 309 Mich App 387, 397; 872 NW2d 730 (2015). If the medical provider does not charge the insured for his or her medical treatment, then the expense is not incurred. *Duckworth v Continental Nat'l Indemnification Co*, 268 Mich App 129, 134; 706 NW2d 215 (2005). And, if the insured no longer remains legally responsible for an expense, then the expense is not incurred within the meaning of the no-fault act. *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 546; 637 NW2d 251 (2001) (holding that, under MCL 500.3107, incurred medical expenses are limited "to those amounts actually paid or that the no-fault insured *remains* legally obligated to pay) (Emphasis added).[7] See also *Farm Bureau Gen Ins Co v Blue Cross Blue Shield*, 314 Mich App 12, 21-22;

---

[7] In *Bombalski*, the plaintiff was covered by two insurance policies: a health insurance policy through BCBS and a no-fault policy that provided for uncoordinated PIP benefits. *Bombalski*, 247 Mich App at 539. After BCBS submitted payments to the medical provides "as full payment for the health care services they provided," the no-fault insurer moved for summary disposition seeking to limit the plaintiff's recovery of uncoordinated PIP benefits to the amount that BCBS had paid and that the providers had accepted as full payment. *Id*. The *Bombalski* Court reasoned

884 NW2d 853 (2016) ("[w]hen an insured has no legal responsibility for disputed medical costs, those expenses are not "incurred" by the insured within the meaning of MCL 500.3107(1)(a) and they are not subject to payment by the no-fault insurer."). That being said, an insured's liability is not altered just because he or she contracted with an insurer to compensate the insured for his or her medical expenses or to pay the medical providers directly for such expenses. *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996). Based upon the foregoing, it is clear that an expense is incurred when the insured accepts medical treatment and is charged for the services provided, but that the expense does not remain "incurred" indefinitely. Rather, once the insured is no longer legally responsible for the expense, then the expense ceases to be "incurred" under the no-fault act.

Turning to the evidence presented in this case, the Spectrum billing ledger reflects that Spectrum has written off the costs associated with Richards' care. Indeed, the expenses appear to have been written off twice, once as a general auto legal write-off and the second time as a Medicare write off. Plaintiff has presented no evidence to refute that the Spectrum bill has been written off so as to relieve him of any legal obligation to pay the bill either directly or through any available insurance. "There must at least be evidence that the service provider expected to be paid for the services rendered." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 342; 830 NW2d 428 (2008). Here, because the uncontroverted evidence reflects that plaintiff has no legal responsibility for the Spectrum bill, we conclude that the expenses were not incurred and are not subject to payment by the no-fault insurer. The trial court, therefore, did not err by summarily dismissing this part of plaintiff's claim.[8]

The circumstances with respect to the DCM Rehabilitation Institute of Michigan and Harper Hutzel are different, however. With respect to those expenses, although the billing ledgers reflect a $0 balance, plaintiff produced evidence in the form of an affidavit from Prevost that contradicted the billing ledgers. Specifically, Prevost averred that, "at this time," those medical providers were expecting payment from Grange and, as a result, they were not directly pursuing their right to payment from plaintiff. As explained in *Shanafelt*, 217 Mich App at 638, a plaintiff's liability for the expenses from those providers is not altered merely because the providers expect payment from the insurer rather than from the plaintiff. The trial court, therefore, erred by

that "[t]he satisfaction of [the] plaintiff's medical bills by BCBS through payment of less than the amounts charged by the providers relieved [the] plaintiff of any responsibility or legal obligation to pay the providers further amounts exceeding those proffered by BCBS and accepted by [the] plaintiff's health care providers." *Id*. at 543. As a result, the plaintiff bore "no liability for the full medical services amounts initially charged by his health care providers" and so he had not incurred the full charges. *Id*.

[8] The trial court order granting partial summary disposition made clear that Grange was liable for the BCBS lien associated with the Spectrum bill.

summarily dismissing the claims related to DMC Rehabilitation Institute of Michigan and Harper Hutzel.[9]

Affirmed in part and reversed in part and remanded for further proceedings. Neither party having prevailed in full, no taxable costs are awarded. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[9] Grange argues that if any of the expenses are considered "incurred," they should be limited to the amounts paid by Medicare and BCBS. The trial court, however, did not address this argument and we decline to do so in the first instance on appeal.